**United States District Court**
**Northern District of Alabama**
**Western Division**

02 SEP 17 PH 3: 29
U.S. DI...
N.D. O...

| | |
|---|---|
| **Nancy Weart,** | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV-00-N-01608-W |
| | ] |
| **Wyeth Ayerst International Inc., et al.,** | ] |
| | ] |
| Defendant(s). | ] |

**ENTERED**

SEP 17 2002

**Memorandum of Opinion**

### I.  Introduction.

This cause comes before the court upon review of the Report and Recommendation

of the United States Magistrate Judge [Doc. # 104], dated August 1, 2002, regarding motions

for summary judgment filed by defendants Wyeth-Ayerst Laboratories ("Wyeth") and Gary

Pendergrass ("Pendergrass").  That report recommended granting the motions as to the

plaintiff's claims of *quid pro quo* sexual harassment[1] and assault and battery, denying the

motions as to the plaintiff's claims of invasion of privacy and the tort of outrage[2] asserted

against both defendants, and denying Wyeth's motion as to the plaintiff's claims of hostile

---

[1] As the Magistrate's Report and Recommendation points out, the Supreme Court has recently abandoned as determinative the distinction between so-called *quid pro quo* sexual harassment and hostile environment sexual harassment.  *See Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998).  This nomenclature remains useful in distinguishing between that type of sexual harassment which results in a tangible employment action (formerly *quid pro quo* sexual harassment) and that which does not (formerly hostile environment harassment).

[2] The tort of outrage is also known as intentional infliction of emotional distress.  *See Callens v. Jefferson County Nursing Home*, 769 So. 2d 273, 281 (Ala. 2000).


115

environment sexual harassment[3] and negligent/wanton retention and supervision. After careful consideration of the briefs in support of the motions for summary judgment [Doc. ## 73, 74]; the plaintiff's responses [Doc. ## 79, 82]; the defendants' replies [Doc. ## 83, 84]; the objections to the Report and Recommendation [Doc. ## 106, 107]; the plaintiff's replies to the objections [Doc. ## 106, 107]; and a *de novo* review of the record, the court adopts in part, and declines to adopt in part, the Report and Recommendation for the reasons that follow.

## II.    Facts.

In considering a motion for summary judgment, the court must consider all the parties' evidence in the light most favorable to the non-moving party. *See Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1309 (11th Cir. 2001). The court, upon a *de novo* review of the record, finds that the Magistrate's Report and Recommendation properly states the facts in the light most favorable to the non-movant, plaintiff Nancy Weart ("Weart"). Thus, the court adopts the factual background set forth in the Magistrate's Report and Recommendation [Doc. # 104, Report and Recommendation at 2-14] with the following additional undisputed facts.

Although Pendergrass never made any overt sexual proposals to Weart and never suggested that he wanted sex from her, Weart believed, based on her interactions with him, that Pendergrass was interested in having sex with her. [Weart Dep. at 328, 329, 500.]

---

[3] Although it is unclear from the Second Amended Complaint, the plaintiff's claims of *quid pro quo* and hostile environment sexual harassment are "brought only against Wyeth Ayerst." [Doc. # 79, Pl.'s Response at 14.] As a matter of law, any such claims a plaintiff attempts to bring against an individual defendant must necessarily fail. *See, e.g., Brewer v. Petroleum Suppliers, Inc.*, 946 F. Supp. 926, 931 (N.D. Ala. 1996) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.") (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)).

Pendergrass never came to Weart's home, nor did he attempt to meet her at a hotel or for dinner or a drink. [Weart Dep. at 250, 327-38.] Pendergrass never threatened Weart physically, although she was frightened when he hugged her in her car. [Weart Dep. at 314, 500.]

## III.   Discussion.

The court adopts the Report and Recommendation of the Magistrate insofar as it recommends that the motions for summary judgment be denied as to the plaintiff's hostile environment sexual harassment, invasion of privacy, and negligent retention/supervision claims.[4] The court further adopts that part of the Report and Recommendation in which the Magistrate recommends that the motions for summary judgment be granted as to the plaintiff's *quid pro quo* sexual harassment and assault and battery claims.[5] The court declines to adopt the Report and Recommendation of the Magistrate with respect to the plaintiff's claim for the tort of outrage.

---

[4] The defendants, in their motions for summary judgment, raised a procedural defense to all of Weart's claims other than those contained in her Second Amended Complaint. Because the action was not removed to this court until after the Second Amended Complaint was filed, the defendants relied on *Zeigler v. Baker*, 344 So. 2d 761 (Ala. 1977) to argue that because Weart did not sufficiently re-allege the counts contained in her Complaint and First Amended Complaint the only claims Weart can properly assert are those contained in her Second Amended Complaint. The court is of the opinion that the defendants misconstrue the *Zeigler* decision. The *Zeigler* court held that "[a]n amended pleading *pro tanto* supersedes a pleading which it amends." *Zeigler*, 344 So. 2d at 763 (emphasis added). *See also Telfare v. City of Huntsville*, 1000357, 2002 WL 64554, at * (Ala. Jan. 18, 2002). *Pro tanto* is defined as "for so much; for as much as may be; as far as it goes." Black's Law Dictionary 850 (6th ed. abridged 1991). Thus, as far as (or to the extent that) an amended pleading *changes* what was in the original pleading, it supersedes that which was in the original pleading. *See also Holcomb v. Morris*, 457 So. 2d 973, 977 (Ala. Civ. App. 1984) ("[A]n amended complaint supersedes the original complaint so that plaintiff's complaint seeking relief *merely* on an unlawful detainer action is treated as though it had never been filed.") (emphasis added). The amended pleadings in question in this case do not change the previous pleadings, but merely add various available damages and a count for sexual harassment. Thus, the amended complaints add to the allegations of the complaint, and the court is of the opinion that the counts and allegations contained in all three complaints are properly before the court at this time.

[5] Upon a *de novo* review of the record, the court finds that the Magistrate reached the correct result as to the portions of the Report and Recommendation that the court herein adopts. Had the motions been before this court in the first instance, the court's analysis of the claims and issues involved would have differed slightly from the analysis contained in the Report and Recommendation. However, the court chooses to summarily adopt those portions of the Report and Recommendation with which it ultimately agrees in the interests of judicial economy.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To prevail on their motions for summary judgment, Wyeth and Pendergrass must affirmatively negate an essential element of plaintiff's claim, or demonstrate that plaintiff's evidence is insufficient to establish an essential element of her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the evidence is such that a reasonable jury could return a verdict for the non-moving party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

To establish the tort of outrage, the plaintiff must show: (1) that the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was "extreme and outrageous;" and (3) that the actions of the defendant caused the plaintiff emotional distress so "severe" that no reasonable person could be expected to endure it. *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981). *See also U.S.A. Oil, Inc. v. Smith*, 415 So. 2d 1098, 1100 (Ala. Civ. App. 1982). The Alabama Supreme Court has defined extreme conduct as "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000). The tort will not reach conduct that amounts to "mere insults, indignities, threats [or] annoyances." *McIsaac v. WZEW-FM Corp.*, 495 So. 2d 649, 651 (Ala. 1986).

The Alabama Supreme Court has limited the instances in which a claim for the tort of outrage should lie. *See Potts*, 771 So. 2d at 465 ("The tort of outrage is an extremely limited cause of action."). Indeed, the Alabama Supreme Court has recognized the tort in

only three types of cases: (1) those arising out of wrongful conduct in the family-burial

context, (2) those arising out of "barbaric methods employed to coerce an insurance

settlement," and (3) those arising out of "egregious sexual harassment." *Id*.

Although the evidence viewed in the light most favorable to the plaintiff could

support a jury verdict in favor of Weart on her sexual harassment and invasion of privacy

claims, the court does not believe the evidence is sufficient to support a claim of outrage.

The cases in which a claim of outrage have survived a motion for summary judgment

involved allegations of sexual harassment considerably more egregious than Weart's

allegations in this case. *See Henry v. Georgia-Pacific Corp.*, 730 So. 2d 119 (Ala. 1998);

*Busby v. Truswal Sys. Corp.*, 551 So. 2d 322 (Ala. 1989); *Brewer v. Petroleum Suppliers,*

*Inc.*, 946 F. Supp. 926 (N.D. Ala. 1996). In *Henry*, the plaintiff's employer required that she

(and all employees) attend counseling sessions with a counselor hired by the employer.

In her counseling sessions, the plaintiff was hypnotized, asked questions about her

orgasms, and asked to take off her shirt. Upon reporting her experience to her supervisor,

she was told that she had to continue seeing the counselor or she would be fired. The

court, with little discussion, found that "a jury could reasonably determine that [the

defendants'] conduct was outrageous." *Henry*, 730 So. 2d at 121. The plaintiffs' supervisor

in *Busby* subjected them to a laundry list of indignities, including inviting them to swim nude

with him, discussing masturbation, telling one of them that he could impregnate her in thirty

minutes, physically threatening to pinch their breasts with pliers, asking one plaintiff to

come to the restroom with him and hold his penis while he urinated, and repeatedly

touching the plaintiffs. *Busby*, 551 So. 2d 324. Finally, *Brewer* involved a supervisor who

repeatedly touched the plaintiff, verbally harassed her, and threatened to rape her. *Brewer*, 946 F. Supp. at 929.

The basis for Weart's claims is her allegation that Pendergrass talked about sex all day long during eleven of her twelve ride-along work days with him, sharing stories of prior sexual escapades to which he had been a party, inquiring about her sexual satisfaction, and commenting on her breasts and her lips. Additionally, she alleges that he hugged her once in the front seat of her car and frequently placed his hand on her back or side when she walked through a doorway in front of him.[6] The court agrees with the Magistrate that the facts, as alleged by Weart, could support a jury finding that she was subjected to severe and pervasive sexual harassment such that her sexual harassment claim should survive summary judgment. The allegations do not, however, rise to the level of conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Potts*, 771 So. 2d at 465. The Alabama Supreme Court has carefully limited the circumstances in which the tort of outrage can be asserted to cases involving conduct more extreme and outrageous than the conduct alleged by Weart in this case.

Furthermore, even assuming that Weart has provided evidence of conduct sufficiently outrageous and extreme, the court believes the plaintiff has failed to meet her burden in establishing facts from which a reasonable jury could find that she suffered "severe" emotional distress. Weart's evidence of emotional distress consists of her testimony that she so dreaded her ride-along work days with Pendergrass that on several

_____

[6] It is unnecessary here to re-state all the plaintiff's allegations. For a summary of the plaintiff's allegations, see the Report and Recommendation at 34-35.

occasions, she became physically sick, "[t]hrowing up." [Weart Dep. at 494.] Additionally,

Weart testified:

> I was under emotional distress all of the time while I was there,
> with his talk about sex; not able to concentrate on my job; not
> knowing where he was headed with conversations that he had;
> wondering if I complained, would I be fired . . . . I was terrified;
> I was afraid. I didn't know if I was going to have a job. I didn't
> know how I was going to support my child. . . . I was very
> concerned about my reputation in the pharmaceutical industry.
> . . . [I suffered from] all the stress I was under all of the time,
> the emotional stress of not knowing what to do; being put in a
> situation that was unbelievable to me, unprofessional, just
> unbelievable to me.

[Weart Dep. 491-92.] Although the court is confident that Weart suffered some emotional

distress as a result of the alleged harassment by Pendergrass, the court does not believe

the distress rises to the level of severity needed to support a claim for the tort of outrage.

*See Johnson v. Fambrough*, 706 So. 2d 739, 742-43 (Ala. Civ. App. 1997) (holding that

employee's distress, which manifested itself in depression and anxiety as diagnosed by her

psychiatrist, "was not so 'severe' as to support recovery for the tort of outrage."). Thus,

Pendergrass's motion for summary judgment with respect to Weart's claim of outrage is due

to be granted.

Additionally, Wyeth's motion for summary judgment on the outrage claim is due to

be granted. An employer can be liable for the intentional torts of its employees if it ratified

the tortious conduct. *See Stevenson v. Precision Standard Inc.*, 762 So. 2d 820, 825 (Ala.

2000). However, if the employee has not committed the tort in question, the employer

cannot be liable under a ratification theory. *Stevenson*, 762 So. 2d at 825. Thus, summary

judgment for Wyeth is proper as to the outrage claim.

**IV.    Conclusion.**

In sum, the court adopts in part, and declines to adopt in part, the Magistrate's Report and Recommendation. The court finds that the defendants' motions for summary judgment are due to be denied as to plaintiff's claims of hostile environment sexual harassment, invasion of privacy, and negligent/wanton retention and supervision, due to the existence of genuine issues of material fact. The court further finds that the defendants' motions for summary judgment are due to be granted as to plaintiff's claims of *quid pro quo* sexual harassment, assault and battery, and the tort of outrage.

A separate order will be entered.

Done, this __17th__ of September, 2002.

_____
Edwin Nelson
United States District Judge